UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA

GENE M. VALENTINO,

     Plaintiff,

v.                                CASE NO.: *3:01cv306/LAC/smn*

CONTINENTAL ASSET MANAGEMENT
CORPORATION, a Delaware corporation; and
 H. EUGENE MCDOWELL, individually,
and in his capacity as President of CAMC.

     Defendants.
_____/

## COMPLAINT

Plaintiff, GENE M. VALENTINO (hereinafter "Valentino"), by and through undersigned counsel, sues Defendants, CONTINENTAL ASSET MANAGEMENT CORPORATION, a Delaware corporation (hereinafter "CAMC"); and H. EUGENE MCDOWELL (hereinafter "McDowell") individually, and in his capacity as President of CAMC, and alleges:

1.     Plaintiff is a citizen of the State of Florida, County of Escambia.

2.     Defendant CAMC, is a corporation incorporated under the laws of the State of Delaware, having its principal place of business in a state other than Florida, and at all times mentioned herein was doing and transacting business in the County of Escambia and the State of Florida.

... OF CLERK
... DISTRICT CT.
... DIST..FLA.
... .LA. FLA.

2001 JUL 26 PH 3: 46



FILED

3.    H. Eugene McDowell is the President of CMAC and a citizen of the State of Minnesota, and at all times mentioned herein was doing and transacting business in the County of Escambia and the State of Florida.

4.    The amount in controversy exceeds the sum of $75,000.00, exclusive of interests and costs, as specified by 28 U.S.C. §1332.

5.    On February 11, 1999, in Pensacola, County of Escambia, State of Florida, Defendants and Plaintiff entered into a written Private Placement Agreement, a copy of which is attached hereto and marked as Exhibit "A" and made a part of this Complaint.

6.    On September 29, 1999, in Pensacola, County of Escambia, State of Florida, Defendants and Plaintiff entered into a written Amended and Restated Agreement, a copy of which is attached hereto and marked Exhibit "B" and made a part of this Complaint.

7.    Plaintiff on his part agreed to place an investment of funds with Defendants in the amount of $750,000.00.   Defendants on their part agreed to pay to Plaintiff no less than 30% of Plaintiff's investment capital per month for one year.

8.    Plaintiff on his part has duly performed all the terms and conditions of the Agreements to be performed by Plaintiff, including but not limited to, placing an investment of funds with Defendants in the amount of $750,000.00. Plaintiff's funds were on deposit in Pensacola, Florida, at the time the Agreement was entered into between the parties, as acknowledged by Exhibit "A."

9.    Defendants have not performed the Agreement in that Defendants have refused and failed, after demand, to make any payments to Plaintiff, or to return to Plaintiff any part of Plaintiff's $750,000.00 in investment capital.   Payments Defendants were obligated to make under the

2

Agreements were to be made to Plaintiff in Pensacola, Florida.

10.     Defendants have acknowledged in writing to Plaintiff their liability on their contractual obligation to Plaintiff in the total amount of $1,200,000.00, a copy of which is attached hereto and marked Exhibit "C" and made a part of this Complaint.

11.     As a result of Defendants breach, Plaintiff has sustained damages in the sum of at least $1,200,000.00.

WHEREFORE, Plaintiff demands judgment against Defendants, together with costs of this action and legal interest, attorneys' fees, and such other and further relief as Plaintiff may be entitled by law.

DIANE M. LONGORIA
FBN: 755834
HAMMONS, LONGORIA & WHITTAKER, P.A.
17 West Cervantes Street
Pensacola, FL 32501
(850) 434-0076
Attorneys for Plaintiff

3

FEB-14-1999 18:17    .<ICHARD L. ALBRIGHT                        206 438 9601    P.02

FEB-12-1999 13:01    RICHARD L. ALBRIGHT                        206 438 9601    P.02

Private Placement Agreement
Transaction Code: CAMC-GMV-0.750
11.02.99

## Private Placement Agreement

**This Agreement** is made on the 11ᵗʰ day of February 1999 by and between the under mentioned parties:

Continental Asset Management Corp. and Eugene McDowell, its President whose offices are located at 3 Christina Center, Walnut St., Wilmington, Delaware USA,

Hereinafter referred to as "EMD" when the context of this Agreement shall so require and

Gene M. Valentino, whose offices are located at 600 S. Barracks St., Suite 201-1, Pensacola, FL 32501,

Hereinafter referred to as "CLIENT" when the context of this Agreement shall so require.

**Whereas**

1.  EMD has the knowledge of the existence of one or more private placement programmes any of which shall hereinafter be referred to as the "PROGRAMME".

2.  THE CLIENT desires to appoint EMD its agent and/or Attorney-in-Fact for the purposes of placing an investment of funds with the programme in the amount of United States Dollars Seven Hundred and Fifty Thousand ($750,000.00) USD. These funds are currently on deposit with J.C. Bradford & Co., Pensacola, FL.

3.  THE CLIENT hereby warrants and represents the INVESTMENT CAPITAL to be used in this transaction is good, clear, clean, derived from a non-criminal origin, free of encumbrances, liens and is available for immediate transfer.

4.  THE CLIENT's INVESTMENT CAPITAL shall be electronically transferred to the bank account nominated in Appendix "A" attached hereto which is to be under the sole control of Ms. Monica Bond acting in her capacity as Chartered Accountant duly registered under the Laws of The United Kingdom and hereinafter referred to as the "ACCOUNTANT" when the context of this agreement shall so require. The ACCOUNTANT is a partner in the firm The Bond Partnership.

EMD Initial                        Page 1 of 7                        CLIENT Initial

PLAINTIFF'S
EXHIBIT
A

FEB-14-1999  18:17    RICHARD L. ALBRIGHT                                      206 438 9601   P.03

FEB-12-1999  13:01    RICHARD L. ALBRIGHT                                      206 438 9601   P.03

P.02          96%                        850 444 9331                    FEB-12-1999  12:45

Private Placement Agreement
Transaction Code: CAMC-GMV-0.750
11.02.99

## TERMS, CONDITIONS AND PROCEDURES

5.  THE CLIENT shall promptly and within Seven (7) calendar days of the execution of this Agreement transfer its INVESTMENT CAPITAL into such bank accounts as may be nominated by EMD and as more fully described in Appendix "A" attached hereto and which forms an integral part of this Agreement.

6.  THE said bank account detailed in Appendix "A" hereto shall be under the sole signature of the ACCOUNTANT and the bank shall issue a letter to this effect. The ACCOUNTANT shall issue a letter stating the conditions under which she shall be permitted to release the INVESTMENT CAPITAL from the nominated bank account and such conditions shall be as hereinafter described in paragraphs 6.1.1., 6.1.2., 6.1.3., 6.1.4. and 6.1.5.

6.1.1.  If THE CLIENT confirms in writing to the ACCOUNTANT that no trading has taken place within Sixty (60) International Banking Days of the cleared transfer of the INVESTMENT CAPITAL into the bank account nominated in Appendix "A" hereto, then the investment shall be returned to the CLIENT. Such no trading activity shall also be confirmed in writing by EMD to the ACCOUNTANT.

6.1.2.  THE ACCOUNTANT shall return the INVESTMENT CAPITAL to the CLIENT upon expiration of this Agreement as more specifically described in paragraph Fifteen (15) hereinafter.

6.1.3.  The ACCOUNTANT has nothing to do with the Programme. Her position is to protect the safety of the INVESTMENT CAPITAL and to guarantee that if funds leave the account, the funds will be replaced by a Surety Bond issued by Lloyds of London.

6.1.4.  It is agreed that the ACCOUNTANT will not release the funds without the approval of the Private Placement Investor (CLIENT). This approval will be indicated by the CLIENT's signature on Exhibit "C" which is a verbatim copy of the Surety Bond to be provided by Lloyds of London. Exhibit "C" will be provided to the CLIENT as soon as the INVESTMENT CAPITAL has been transferred to the ACCOUNTANT's designated bank account. Once the Surety Bond has been received, the ACCOUNTANT shall have the authority to release the INVESTMENT CAPITAL, provided that the Surety Bond has been authenticated by the Lloyds of London Broker and carries the same verbiage as approved by the CLIENT. It shall not be the responsibility of the ACCOUNTANT to authenticate the Surety Bond; this task shall be the sole responsibility of the Lloyds of London Broker.

Page 2 of 7

EMD Initial

CLIENT Initial

FEB-14-1999  14:45    Feb-12-99 13:40;    850 444 9331;    Sent By: Valentino Holdings;    P.04
Page 2/2                              612              97%

FEB-14-1999  18:18        RICHARD L. ALBRIGHT                        206 438 9601    P.04

FEB-12-1999  13:02        RICHARD L. ALBRIGHT                        206 438 9601    P.04

Private Placement Agreement
Transaction Code: CAMC-GMV-0.75%
11.02.99

6.1.5.   THE ACCOUNTANT shall be permitted to move the INVESTMENT CAPITAL from the bank nominated in Appendix "A" hereto into an alternative bank account provided such bank account shall be in a first class bank. The ACCOUNTANT shall be the sole signatory of the newly designated bank account and the terms and conditions of this Agreement equally apply. The ACCOUNTANT shall inform the CLIENT in writing of such transfer of the INVESTMENT CAPITAL.

7.   THE ACCOUNTANT shall be required to maintain sufficient insurance coverage in amounts at least equal to the total INVESTMENT CAPITAL with a reputable insurer so as to protect the CLIENT' INVESTMENT CAPITAL from misappropriation.

8.   EMD shall require the bank holding the said INVESTMENT CAPITAL FUNDS to provide a monthly statement of account to the client showing the INVESTMENT CAPITAL and/or debenture instruments on deposit together with any accrued yields. If this is not feasible, for any reason whatsoever then the EMD shall produce such a statement of account.

9.   THERE shall be no unauthorized communication of any nature whatsoever with the bank specified in Appendix "A" hereto other than the bank to bank electronic transfer of the INVESTMENT CAPITAL. In the event of any such unauthorized communication with the bank nominated to receive the INVESTMENT CAPITAL. then this Agreement may be declared null and void.

10.   THE CLIENT shall be responsible for informing EMD of the date and time of the electronic transfer of INVESTMENT CAPITAL and such information shall be passed by facsimile with the minimum delay.

11.   THE earned yield from the Programme shall be no less than Thirty (30) percent of the CLIENT's INVESTMENT CAPITAL per month for one year.

12.   THE first payment of earned yield shall be made no later than Forty (40) international banking days after the clearance of the INVESTMENT CAPITAL into the bank account nominated in Appendix "B" hereto.

13.   THE CLIENT acknowledges and agrees the earned yield shall be first remitted into a trust account nominated by EMD for disbursement within the United Kingdom and then to a bank account holding the INVESTMENT CAPITAL or as may be more specifically nominated by the CLIENT as furnished in Appendix "B" attached hereto and which forms an integral part of this Agreement.

EMD Initial                              Page 3 of 7                              CLIENT Initial

FEB-14-1999  14:45                                                                                            P.05

4

FEB-14-1999  18:19      RICHARD L. ALBRIGHT                                206 438 9601   P.05

FEB-12-1999  13:03      RICHARD L. ALBRIGHT                                206 438 9601   P.05

Private Placement Agreement
Transaction Code: CAMC-GMV-0.750
11.02.99

14. THE CLIENT irrevocably accepts and agrees should circumstances so require EMD and or his designate shall have the right to margin, pledge, lien and encumber the said bank account nominated in Appendix "A" hereto as deemed to be necessary and/or appropriate. It is specifically accepted and understood by EMD and/or his assigns that any such margin, pledge, lien or encumbrance shall not be the liability of the CLIENT. Any and all margins, pledges, liens or encumbrances shall be liquidated to ensure the bank account nominated in Appendix "A" hereto shall be free and clear upon expiration of this agreement. The ACCOUNTANT, Ms. Monica Bond, may issue a Power of Attorney to facilitate trading.

15. THIS Agreement shall be deemed to have expired upon the final disbursement of the earned yield as described in Paragraph Eleven (11) herein before and the said INVESTMENT CAPITAL shall be returned to the CLIENT by electronic means within Seven (7) international banking days of the said transfer. The CLIENT shall be responsible for any transfer costs imposed by banks.

## MISCELLANEOUS

16. It is hereby agreed and understood by the Parties hereto that this Private Placement Agreement does not create or constitute a partnership, an employer-employee relationship, joint venture or any other form of commercial amalgamation for the purposes of taxation or for any other reason whatsoever or howsoever implied, nor shall this Agreement be construed as an investment management agreement. The Parties hereto agree to be individually and separately liable for any and all taxes, howsoever and where so ever incurred and which might arise out of the implementation of this Agreement.

17. THIS Agreement shall be governed by and construed under the Laws of England and Wales. Any dispute arising shall be referred for arbitration under the rules and procedures of the International Chamber of Commerce, Paris, France.

18. A facsimile transmission of this agreement, duly executed by the Parties hereto, shall be considered as an original and shall be legally binding thereto.

19. THE Parties hereto of this Agreement warrant, represent, acknowledge and attest they are fully authorized to enter into and execute this Agreement and to be fully bound by the stated terms and conditions.

20. THIS Agreement shall endure and be binding upon the Parties hereto as well as their heirs, successors, administrators and or assigns.

EMD Initial                           Page 4 of 7                         CLIENT Initial

FEB-14-1999  18:20        RICHARD L. ALBRIGHT                206 438 9601   P.06

FEB-12-1999  13:04        RICHARD L. ALBRIGHT                206 438 9601   P.06

**Private Placement Agreement**
**Transaction Code: CAMC-GMV-0.750**
11.02.99

21.   THE terms of this Agreement shall constitute all the terms agreed by the Parties hereto and the Parties acknowledge that no other warranty or representation has induced this Agreement.

22.   THE Parties hereto acknowledge that this information gained from each other is of a highly confidential nature. Any disclosure, whatsoever or howsoever, of names, banks, bank accounts, entities or relevant information connected with this Agreement to any unauthorized person(s) is strictly forbidden. Disclosure to any third party of this information whatsoever can only be given with the written permission of both parties; the only exception to this provision is consultation with legal counsel.

23.   BOTH Parties hereto agree normal standards of non-circumvention and non-disclosure as set forth in Paragraph 22 shall remain valid and effectively in force for a period of not less than Five (5) years from the date of execution of this Agreement.

24.   THE Parties hereto agree and accept the usual provisions of "Force Majeure" as applied under International Chamber of Commerce, Paris, France shall govern the terms and conditions of this Agreement.

25.   THE foregoing Twenty-four (24) paragraphs represent the entire Agreement between the CLIENT and EMD.

*In Witness Whereof* we hereunto subscribed our names and affixed the corporate seals as of the date first above written.

For and on behalf of                          For and on behalf of
Continental Asset Management Corp.            Gene M. Valentino

Eugene McDowell, President                    Gene M. Valentino

Page 5 of 7

EMD Initial                                   CLIENT Initial

FEB-14-1999  14:47                                                      TOTAL P.06

# AMENDED AND RESTATED AGREEMENT

This Amended and Restated Agreement (the Restated Agreement) is entered into by and between Continental Asset Management Corp. (CAMC") and Harold Eugene McDowell ("HEM"), its president, whose offices are located a 3 Christiana Center, Walnut St. Wilmington, Delaware and Gene M. Valentino ("GMV) whose offices are located at 600 S. Barracks St., Suite 201-1, Pensacola, Florida ("GMV")(CAMC and GMV are sometimes collectively referred to as the "Parties") this 29th day of September, 1999. For good and valuable consideration, the sufficiency and receipt of which is hereby acknowledged, the Parties agree as follows:

The Restated Agreement hereby incorporates the terms and conditions of the agreements previously entered into by the Parties on the 11th day of February 1999 bearing the transaction codes CAMC-GMV-0.750 (the "Previous Agreements"). Provided, however, the dates contained in the Previous Agreements which relate to trading dates and payment dates are hereby superseded by those dates further set forth below.

In addition to CAMC and GMV restating the Previous Agreements, CAMC hereby accepts the following "additional obligations": CAMC agrees to confirm to GMV by executing this Restated Agreement that it will be able to provide GMV a written confirmation from CAMC or other acceptable third party on a bi-weekly basis that the principal bank through which the trading program is conducted continues to trade; that sufficient profits are being generated to pay GMV, on a monthly basis, profits equal to an amount no less than thirty percent (30%) of its invested capital on a monthly basis (the "Profits"); that the payment dates on which wire transfers of Profits are to be initiated to GMV will be set forth in a written schedule of payments confirmed by an authorized Officer of the trading group; that the first payment of Profits shall be on October 29, 1999 or other date agreed to by the Parties and that written notice shall be immediately given to GMV in the event CAMC has knowledge that any of the items set forth in this paragraph will not be met.

CAMC will also provide a copy of the Surety Bond or a letter of confirmation from the insurance company that the Surety Bond has been issued in accordance with the draft copy of same, which was provided to GMV at the commencement of this transaction. As stated above, the first payment of Profits shall be made on October 29th, 1999 with subsequent payments to be made every thirty (30) calendar days with the exception of the months of December and January.

Upon written confirmation to GMV by CAMC that the above additional obligations have been confirmed by CAMC, GMV shall notify CAMC of its acceptance of the terms and conditions of the Restated Agreement by executing the Restated Agreement and tendering a copy or an original to CAMC.

ACCEPTED AND AGREED TO AS OF THE DATE FIRST WRITTEN ABOVE.

Continental Asset Management Corp.                Gene M. Valentino

BY: _____                  BY: _____
H. Eugene McDowell, President                     Gene M. Valentino

PLAINTIFF'S
EXHIBIT

B

### Continental Asset Management Corporation
#### 3 Christina Center, Wilmington, Delaware

June 19, 2001

Gene Valentino
Via Facsimile

Dear Gene:

This letter is to confirm that Continental Asset Management Corporation has an outstanding contractual obligation to pay to you the amount of One Million Two Hundred Thousand United States Dollars ($1,200,000.00 USD). It is our intent to retire this matter by the end of this year.

If you have any further questions about this matter, please feel free to contact me at your convenience.

Sincerely,

Richard L. Albright, for and on behalf
of Eugene McDowell, President

Eugene McDowell  President

6-21-01

PLAINTIFF'S
EXHIBIT
C

JUN 21 '01  11:06

## MESSAGE CONFIRMATION

### JUN-21-2001 10:14AM THU

FAX  NUMBER:
NAME        :

| | | |
|---|---|---|
| NAME/NUMBER | : | 18504449331 |
| PAGE | : | 000 |
| START TIME | : | JUN-21-2001 10:13AM THU |
| ELAPSED TIME | : | 00'22" |
| MODE | : | G3 STD |
| RESULTS | : | [ COMM. ERROR ] |

*Continental Asset Management Corporation*
*J Christina Center, Wilmington, Delaware*

June 19, 2001

Gene Valentino
Via Facsimile

Dear Gene:

This letter is to confirm that Continental Asset Management Corporation has an outstanding contractual obligation to pay to you the amount of One Million Two Hundred Thousand United States Dollars ($1,200,000.00 USD). It is our intent to retire this matter by the end of this year.

If you have any further questions about this matter, please feel free to contact me at your convenience.

Sincerely,

Richard L. Albright, for and on behalf
of Eugene McDowell, President

Eugene McDowell President

6-21-01

Thu Jul 26 16:29:11 2001

UNITED STATES DISTRICT COURT

TALLAHASSEE    , FL

Receipt No.    301 12621
Cashier        stephf

Check Number:  1976

DØ Code    Div No
 4617       3

Sub Acct Type Tender      Amount
1:510000  N     2         90.00
2:086900  N     2         60.00

Total Amount        $    150.00

CIVIL FILING FEE FOR 3:01CV306/LAC/SMN


DIANE LONGORIA, P.A., 904-434-0076